IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

JACKSON MEMMER,                          )
                                         )
            PLAINTIFF,                    )        CIVIL ACTION NO. _____
                                         )
    vs.                                  )
                                         )        HON.
UNITED WHOLESALE                         )
MORTGAGE,                                )
                                         )
            DEFENDANT.                    )
_____)

## COMPLAINT

PLAINTIFF, JACKSON MEMMER, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against UNITED WHOLESALE MORTGAGE.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## JURISDICTION

1.      At all times relevant to this complaint, PLAINTIFF KASSANDRA MEMMER was a resident of Genesee, County in the State of Michigan.

2.      DEFENDANT UNITED WHOLESALE MORTGAGE is a domestic limited liability company, which has a place of business at 585 South Blvd., E. Pontiac, MI 488341.

3.      This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5.      Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title

VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to

Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6.      Plaintiff began working for Defendant as a conventional mortgage underwriter II on

August 30, 2019.

7.      Plaintiff worked from home during the COVID-19 shut down in March 2020.

8.      In July 2020, Plaintiff returned to the office despite not being conformable working in

person because Defendant was not following COVID-19 safety guidelines.

9.      Plaintiff and his wife bought their first home in October of 2020 and used Defendant as

their mortgage company. During that process Plaintiff's boss, Kelly Gayle, and other leaders

found out that Plaintiff was transgender.

10.     In November of 2020 Plaintiff requested to work from home while his wife started

fertility treatment and working in person during the pandemic put fertility process at risk.

11.      At this time, COVID-19 was getting worse and spreading through United Wholesale

Mortgage.

12.     Around January 2021, United Wholesale Mortgage started getting investigated by

MIOSHA for not following COVID-19 guidelines since multiple employees reported them to

FOX 2 NEWS.

13.     Two months later, Plaintiff found out his wife was pregnant but did not tell Defendant

because it was too early in the pregnancy.

14.     Finally, in May 2021, Plaintiff informed Defendant that his wife was pregnant.

15.     Defendant made it known that if employees did not return to work on July 9, 2021, that Defendant would take that as an automatic resignation.

16.     Plaintiff went back to the office July 9, 2021 with over 10,000 other employees within a few days of each other.

17.     John Gavette approached Plaintiff at his desk about finding out that Bre Lobodzinski was working from home. Gavette knew that Plaintiff was also bothered by Plaintiff's wife not being allowed to work from home, and so was John because of other personal situations.

18.     Other employees were allowed to work from home, such as Anthony Deluca.

19.     Plaintiff went on paternity leave on November 13, 2021 and retuned on the 29th of the same month.

20.     Plaintiff had a meeting with division lead Kelly Gale and AVP Matthew Shelton in regards to an investigation into clearing conditions with appraisals, that was done while Plaintiff was on paternity leave.

21.     On December 2, 2021, Plaintiff was then pulled into another office with Matthew Shelton, Kelly Gale and a woman from HR. Plaintiff was then told that, due to the situation with clearing conditions, he was being let go.

22.     On December 15, 2021, Plaintiff did not receive his final bonus from the month of November, which would equate to roughly $5,000.

23.     Plaintiff complained to the EEOC about the discriminatory treatment, as set forth in the counts below.

24.     Plaintiff received his right to sue letter from the EEOC on January 19, 2023, and this suit followed.

## **COUNT I**

3

**RETALIATION IN VIOLATION OF TITLE VII**

25.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

26.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

27.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

28.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

29.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff informed Defendant that would be safer to work from home since his wife was starting fertility treatments and due to the rise in COVID-19 cases at the office.

30.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

31.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts.

32.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

33.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

34.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional

distress.

35.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

36.     Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**
**RETALIATION IN VIOLATION OF THE ELCRA**

37.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

38.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

39.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

40.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

41.     Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff informed Defendant that would be safer to work from home since Plaintiff's wife was starting fertility treatments and due to the rise in COVID-19 cases at the office.

42.     Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to agents of Defendant.

43.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts.

44.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

45.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

46.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

47.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

48.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

### HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII

49.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

50.     At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

51.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

52.     Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

53.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

54.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving made the situation untenable.

55.     The communication and conduct were unwelcomed.

56.     The unwelcomed conduct and communication were intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile. and offensive work environment, as alleged in the statement of facts.

57.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

58.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

59.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA

60.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

61.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

62.     A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

63.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

64.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

65.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to ignore Plaintiff's grievances made the situation untenable.

66.     Additionally, Defendant's treated female employees, and Plaintiff, in a hostile, intimidating, and offensive way.

67.     The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

68.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

69.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

70.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

71.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

72.     Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

73.     Plaintiff claims Defendant discriminated against him by not accommodating his disability.

74.     Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

75.     A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

76.     Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

77.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

78.     At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

79.     At all relevant times to this action, Plaintiff was associated with a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job.

80.     Plaintiff's wife, who also worked for Defendant, was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that

substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

81.     Plaintiff's wife disability was health complications due to pregnancy pregnant.

82.     Plaintiff requested to move departments to lower stress levels and to work from home to lower stress and exposure to COVID-19 for his wife who had a disability.

83.     At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to switch departments and work from home.

84.     At all times relevant hereto, Defendant could have accommodated Plaintiff's wife's disability without suffering an undue hardship.

85.     Defendant was aware of Plaintiff's wife's disability at the time of his request.

86.     At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of his association with a person with a disability.

87.     At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for requesting an accommodation due to his wife's disability.

88.     Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of requesting am accommodation due to his wife's disability.

10

89.     Defendant failed to provide Plaintiff with a reasonable accommodation.

90.     Defendant refused to allow Plaintiff to work from home due to his wife's disability.

91.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

92.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

93.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

### COUNT VI
### VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT – FAILURE TO ACCOMMODATE

94.     Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

95.     Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA "), MCL § 37.1201, et seq.

96.     Plaintiff claims Defendant discriminated against him by terminating him because he requested  accommodation for his wife's disability.

97.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

98.     At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

99.     At all relevant times to this action, Plaintiff's wife was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of her job.

100.    Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

101.    Plaintiff 's disability was complications related to his wife's pregnancy.

102.    Plaintiff requested to work from home to lower the possibility of contracting COIVD-19 for the safety of his unborn child.

103.    At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

104.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

105.    Defendant was aware of Plaintiff 's disability at the time of Plaintiff's request.

106.    At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

107.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which

deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to him requesting an accommodation.

108.   Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

109.   Defendant failed to provide Plaintiff with a reasonable accommodation.

110.   Defendant refused to allow Plaintiff to work from home due to his disability.

111.   Defendant sent Plaintiff home instead of accommodating him.

112.   As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

113.   As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer physical pain and suffering.

114.   As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## COUNT VII
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – RETALIATION

115.   Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

116.   Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

117.   Plaintiff claims Defendant discriminated against him by not accommodating his disability.

118.    Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

119.    A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

120.    Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

121.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

122.    At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

123.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions of her job.

124.    Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of her major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

125.    Plaintiff's disability was complications related to his wife's pregnancy.

126.    Plaintiff requested to work from home to lower the possibility of contracting COIVD-19 for the safety of his unborn child.

127. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

128. At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

129. Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

130. At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

131. At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for him requesting an accommodation.

132. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

133. Defendant failed to provide Plaintiff with a reasonable accommodation.

134. Defendant refused to allow Plaintiff to work from home due to his disability.

135. Defendant terminated Plaintiff because of his accommodation request.

136.    As a direct and proximate result of Defendant's discrimination and retaliation, up through and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

## COUNT VIII
## VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT – RETALIATION

137.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

138.    Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

139.    Plaintiff claims Defendant discriminated against him by not accommodating his disability.

140.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

141.    At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

142.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of his job.

143.    Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

144.    Plaintiff's disability was complications related to his wife's pregnancy.

145.    Plaintiff requested to work from home to lower the possibility of contracting COIVD-19 for the safety of his unborn child.

146.   At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

147.   At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

148.   Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

149.   At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

150.   At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to her employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive him of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to him requesting an accommodation.

151.   Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

152.   Defendant failed to provide Plaintiff with a reasonable accommodation.

153.   Defendant refused to allow Plaintiff to work from home due to his disability.

154.   Defendant terminated Plaintiff because of his accommodation request.

17

155.    As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

### COUNT IX
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION

156.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

157.    Plaintiff brings this suit under a federal law called the Americans with Disabilities Act ("ADA").

158.    Plaintiff claims Defendant discriminated against him by not accommodating his disability.

159.    Under the ADA, to "accommodate" a disability is to make some change that will let a person with a disability perform the job. An accommodation is "reasonable" if it is effective and its costs are not clearly disproportionate to the benefits it will produce.

160.    A reasonable accommodation may include a change in such things as ordinary work rules, facilities, conditions, or schedules.

161.    Once an employer is aware of an employee's disability and an accommodation has been requested, the employer must discuss with the employee whether there is a reasonable accommodation that would permit her to perform the job. Both the employer and the employee must cooperate in this interactive process in good faith.

162.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

163.    At all relevant times, Defendant was an employer within the meaning of the Americans With Disabilities Act, 42 U.S.C. § 12111(4)(5).

164.    At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to 42 U.S.C. § 12111(8) who, with or without accommodation, could perform the essential functions her job.

165.    Plaintiff was an individual with a disability within the meaning of 42 U.S.C § 12102, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of her job with Defendant.

166.    Plaintiff's disability was complications related to his wife's pregnancy.

167.    Plaintiff requested to work from home to lower the possibility of contracting COIVD-19 for the safety of his unborn child.

168.    At all times relevant hereto, Defendant had a duty under the ADA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

169.    At all times relevant hereto, Defendant could have accommodated Plaintiff's disability without suffering an undue hardship.

170.    Defendant was aware of Plaintiff's disability at the time of Plaintiff's request.

171.    At all relevant times hereto, Defendant had a duty under the ADA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

172.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which

deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation for his requesting an accommodation.

173. Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his disability.

174. Defendant failed to provide Plaintiff with a reasonable accommodation.

175. Defendant refused to allow Plaintiff to work from home.

176. As a direct and proximate result of Defendant's discrimination and retaliation, up to and through her termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

177. As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

178. As a direct and proximate result of Defendant's discrimination and retaliation, up to and through termination, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

**COUNT X**
**VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES ACT –**
**DISABILITY DISCRIMINATION**

179. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

180. Plaintiff brings this suit under the Michigan Persons with Disabilities Act ("PWDCRA"), MCL § 37.1201, et seq.

181.   Plaintiff claims Defendant discriminated against him by not accommodating his disability.

182.   At all relevant times, Plaintiff was an employee of Defendant within the meaning of the PWDCRA.

183.   At all relevant times, Defendant was an employer within the meaning of the PWDCRA.

184.   At all relevant times to this action, Plaintiff was a qualified individual with a disability pursuant to the PWDCRA who, with or without accommodation, could perform the essential functions of his job.

185.   Plaintiff was an individual with a disability within the meaning of the PWDCRA, in that he had a physical impairment that substantially limited one or more of his major life activities, who with or without accommodation could perform the essential functions of his job with Defendant.

186.   Plaintiff's disability was complications related to his wife's pregnancy.

187.   Plaintiff requested to work from home to lower the possibility of contracting COIVD-19 for the safety of his unborn child.

188.   At all times relevant hereto, Defendant had a duty under the PWDCRA to accommodate Plaintiff for purposes of employment unless the accommodation would impose an undue hardship. Defendant's duty to accommodate Plaintiff includes, but is not limited to, allowing Plaintiff to work from home.

189.   At all times relevant hereto, Defendant could have accommodated Plaintiff's wife's disability without suffering an undue hardship.

190.   Defendant was aware of Plaintiff's wife's disability at the time of Plaintiff's request.

191.    At all relevant times hereto, Defendant had a duty under the PWDCRA not to discriminate against Plaintiff with respect to compensation or terms, conditions, or privileges of employment because of a disability.

192.    At all relevant times hereto, Defendant had a duty not to retaliate against Plaintiff with respect to his employment, compensation or terms, conditions, or privileges of employment, or to limit, segregate, or classify Plaintiff for employment in any way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect the employment status of Plaintiff, in retaliation to him requesting an accommodation for his wife's disability.

193.    Notwithstanding said duties as set forth above, Defendant discriminated against Plaintiff because of his wife's disability.

194.    Defendant failed to provide Plaintiff with a reasonable accommodation.

195.    Defendant refused to allow Plaintiff to work from home due to his wife's disability.

196.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment.

197.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer physical pain and suffering.

198.    As a direct and proximate result of Defendant's discrimination and retaliation, up to and including termination, Plaintiff has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, and anger.

## COUNT XI

## GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF TITLE VII

199.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

200.    At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

201.    Defendant's conduct, as alleged herein, violated Title VII, which makes it unlawful to sexually harass an employee or discriminate against said employee on the basis of gender.

202.    A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

203.    Plaintiff is a transgender man and a member of a protected class.

204.    Plaintiff was subjected to communication or conduct on the basis of his gender, as indicated in the facts above.

205.    A male broker who worked for Defendant sexually harassed Plaintiff.

206.     The communication and conduct from the broker was unwelcomed.

207.    The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

208.    Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

209.    Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to her.

210.    As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

211.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT XII

## GENDER/SEXUAL HARRASMENT/DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

212.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

213.    At all material times, Defendant was an employer covered by, and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), as amended.

214.    Defendant's conduct, as alleged herein, violated ELCRA, which makes it unlawful to sexually harass or discriminate against an employee.

215.    A respondeat superior relationship existed because Plaintiff's supervisors, had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

216.    Plaintiff is a transgender man and a member of a protected class.

217.    Plaintiff was subjected to communication or conduct on the basis of her gender, as indicated in the facts above.

218.    A male broker who worked for Defendant sexually harassed Plaintiff.

219.    The communication and conduct from the broker was unwelcomed.

220.    The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

221.    Plaintiff notified Defendant and/or Defendant's agents of the unwelcomed conduct and communication and Defendant failed to remedy the unwelcomed conduct or communication.

222.    Tyler Creager, leader filling in for her leader for the day, never reported the incident, although Plaintiff reported the harassment to him.

223.    As a direct and proximate result of Defendant's and Defendant's agent's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and was constructively terminated.

<u>**COUNT XIII**</u>
<u>**FAILURE TO  PAY MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 201, et seq. ("FLSA")**</u>

224.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

225.    At all material times, Plaintiff was an employee, and Defendant her employer covered by, and within the meaning of the FLSA.

226.    Section 206 of the FLSA, 29 U.S.C. § 206(a)(1)(C), mandates that employers pay all employees engaged in commerce or in the production of goods for commerce, minimum wages for their work in an amount set by federal law. Section 218 of the FLSA, 29 U.S.C. §218(a), provides that employers pay such minimum wages as established by state law, should it be higher than the federal minimum.

227.     As stated above, Plaintiff was forced to work time for which he was not compensated at

for.

228.     Because of Defendants' unlawful failure and refusal to pay Plaintiff minimum wages,

Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b), to recover his

unpaid minimum wages, including interest and liquidated damages thereon, in amounts to

be proven at trial, as well as reasonable attorney's fees and costs.

229.     Defendants willfully, intentionally, and with reckless disregard failed to pay Plaintiff the

minimum wage for all her hours worked in violation of the FLSA.

230.     Defendant would not, and did not, compensate Plaintiff with his wages earned for those

hours he work in violation of the FLSA.

231.     Defendant, by and through its agents, had actual knowledge, and in fact directed and

mandated that Plaintiff work during time that was uncompensated by Defendant.

232.     Plaintiff requests relief as described in the Prayer for Relief below

## COUNT II
## VIOLATION OF FLSA OVERTIME LAW

233.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

234.     At all material times, Plaintiff was an employee, and Defendant his employer covered by,

and within the meaning of the FLSA.

235.     29 U.S.C. 207(a)(1) states:

> Except as otherwise provided in this section, no employer shall
> employ any of his employees who in any workweek is engaged in
> commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the
> production of goods for commerce, for a workweek longer than
> forty hours unless such employee receives compensation for his
> employment in excess of the hours above specified at a rate not
> less than one and one-half times the regular rate at which he is

employed.

236.    As noted above, Plaintiff routinely was forced to work without compensation for the additional time beyond her given 40 hour per week work schedule.

237.    Accordingly, for the violations of Defendant that existed after 40 hours, Defendant also violated the FLSA overtime laws.

238.    Because of Defendant's unlawful failure and refusal to pay Plaintiff her overtime wages, Plaintiff is entitled, pursuant to § 216(b) of the FLSA, 29 U.S.C., to recover his unpaid minimum wages, including interest and liquidated damages thereon, in amounts to be proven at trial, as well as reasonable attorney's fees and costs.

239.    Defendants willfully, intentionally, and with reckless disregard failed to pay Plaintiff the overtime wage for his November bonus.

240.    Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, JACKSON MEMMER, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  May 29, 2023                              Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

<u>/s/ Carla D. Aikens</u>
Carla D. Aikens (P69530)
Tasha Brownlee (P84359)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
tasha@aikenslawfirm.com
*Attorneys for Plaintiff*