UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKSON MEMMER,

    Plaintiff,

v.

UNITED WHOLESALE MORTGAGE,

    Defendant.
_____/

Case No. 23-cv-11261

Hon. Sean F. Cox
United States District Court Judge

### AMENDED OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION UNDER RULE 12(b)(1), OR ALTERNATIVELY, RULE 12(b)(6)

The defendant petitions by motion for an order compelling the plaintiff to arbitrate the claims that he raised in his complaint. The defendant moves to dismiss those claims in the same motion. Because the defendant introduced evidence that the plaintiff electronically signed an arbitration agreement embracing the plaintiff's claims and the plaintiff did not unequivocally deny signing the arbitration agreement, the Court grants the defendant's motion to the extent that it seeks an arbitration order and denies it in all other respects.

### BACKGROUND

The plaintiff, Jackson Memmer, worked for the defendant, United Wholesale Mortgage ("UWM"), as a mortgage underwriter from August 2019 until the defendant fired him in December 2021. In his complaint, the plaintiff asserted federal statutory claims under title VII of the Civil Rights Act (Counts I, III, and XI); the Americans with Disabilities Act (Counts V, VII, and IX); and the Fair Labor Standards Act (Counts XIII and XIV). (ECF No. 1). The plaintiff also asserted supplemental state-law claims under Michigan's Elliot-Larsen Civil Rights Act

1

(Counts II, IV, and XIII) and the Michigan Persons with Disabilities Act (Counts VI, VIII, and X).

The defendant filed a motion to compel arbitration of the plaintiff's claims. (ECF No. 7). In that same motion, the defendant moved to dismiss the plaintiff's complaint under Rule 12(b). The Court construes the defendant's motion to dismiss the plaintiff's complaint as a motion to dismiss all of the claims that the plaintiff asserted in his complaint.

In support of its motion, the defendant cites a declaration from Lisa Enriquez, the defendant's director of talent analytics:

> 2.  Attached as Exhibit A [to this declaration] is the Employment Agreement between Plaintiff Jackson Memmer and Defendant United Wholesale Mortgage.
>
> 3.  Plaintiff Jackson Memmer signed this Employment Agreement electronically using UWM's iCIMS system. In the iCIMS system, which is used throughout the company's hiring and onboarding process, candidates (including Plaintiff Jackson Memmer) create their own profile, including their own unique login and password.

(ECF No. 7-1, PageID.63).

The defendant attached the putative employment agreement between it and the plaintiff as exhibit A to Enriquez's declaration. Section 31 of the agreement states, "THE COMPANY AND EMPLOYEE HEREBY KNOWINGLY AND VOLUNTARILY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACTS OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT AND THE EMPLOYMENT RELATIONSHIP BETWEEN THE PARTIES." (*Id.* at 77). Section 32 of the agreement further provides, "BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A

2

TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION." (*Id.*).

The defendant also cites a portion of the employment agreement that it alleges represents the plaintiff's electronic signature:



(*Id.* at 80).

The plaintiff responds that the defendant is not entitled to an arbitration order because the parties do not have a valid arbitration agreement. (ECF No. 10). As evidence for this claim, the plaintiff cites his own declaration:

> 19. I do not recall signing an arbitration agreement and I had no idea what it meant or its significance.
>
> 20. I was never told what he was signing nor did I understand the document or its implications.
>
> 21. Any documents sent to me were emailed and I was told to return them as soon as possible in order to get orientation started.
>
> 22. I would not have signed an arbitration agreement without further explanation of what arbitration is, how it works, and how it applies to the employment agreement for representation.

3

(ECF No. 10-1, PageID.129).

The parties have fully briefed this matter and the Court heard oral argument on November 11, 2023.  Having reviewed the papers and heard the parties, the Court grants the defendant's motion in part and denies it in all other respects.

**ANALYSIS**

The defendant moves the Court to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–15, which instructs that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C § 2.  To enforce this substantive rule, 9 U.S.C. § 4 permits "[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration [to] petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

The defendant petitions for an arbitration order under § 4 by motion, which is permitted in this Circuit.  *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 836–37 (6th Cir. 2021).  In its motion, the defendant cites a case where this Court analyzed a motion to compel arbitration under Fed. R. Civ. P. 12(b)(1) and cases where this Court suggested that Fed. R. Civ. P. 12(b)(3) or (6) might apply to such motions.  However, courts in this Circuit apply substantive *and* procedural rules supplied by the FAA to petitions for arbitration such as the defendant's motion for arbitration under § 4.  *See, e.g.*, *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021).

When a party to pending litigation files a § 4 arbitration petition with a federal district court, the FAA instructs that the court must "hear the parties, and upon being satisfied that the

4

making of the agreement for arbitration . . . is not in issue, . . . make an order directing the parties to proceed to arbitration in accordance with the terms of [their] agreement." § 4. However, "[i]f the making of the arbitration agreement . . . be in issue," then the court must "proceed summarily to the trial thereof." *Id.* Here, the making of the parties' arbitration agreement is not in issue.

Courts may only order a party opposing arbitration to arbitrate "in accordance with the terms of [an] arbitration agreement," § 4, and therefore this Court "must determine the scope of [the parties' arbitration] agreement." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Here, the parties' arbitration agreement embraces all of the claims that the plaintiff asserted in his complaint.

Courts must address a final threshold inquiry under § 4: "[I]f federal statutory claims are asserted, [courts] must consider whether Congress intended those claims to be nonarbitrable." *Id.* Here, Congress did not intend that any of the plaintiff's federal statutory claims should be nonarbitrable, so the defendant is entitled to an order compelling the plaintiff to arbitrate all of the claims that he asserted against the defendant his complaint.[1]

Here, the parties agreed to arbitrate, all of the plaintiff's claims are within the scope of the parties' arbitration agreement, and Congress did not intend that any of the plaintiff's federal statutory claims should not be arbitrable. The defendant is entitled to an order compelling the plaintiff to arbitrate all of his claims.

---

1. The Sixth Circuit has also instructed that "if . . . some, but not all, of the claims in [an] action are subject to arbitration, [courts] must determine whether to stay the remainder of the proceedings pending arbitration." *Id.* Because all of the plaintiff's claims are embraced by the parties' arbitration agreement and none of his federal statutory claims are nonarbitrable, the Court does not reach this inquiry.

I.  **Existence of the Arbitration Agreement**

To determine whether an agreement is in issue under § 4, "Rule 56's standards govern . . . when a party alleges that no contract exists." *Boykin*, 3 F.4th at 838. As such, a trial on the question of the making of an arbitration agreement is unnecessary only if a petitioner presents evidence from which a reasonable jury could find "all required elements of a contract" with respect to the alleged arbitration agreement, *id.* at 839, and a party opposing arbitration fails to present evidence of "a genuine dispute of material fact as to the validity of the agreement to arbitrate," *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). If a party opposing arbitration successfully rebuts a petitioner's *prima facie* case, then a summary trial on the question of the making of the parties' arbitration agreement is necessary. In conducting this inquiry, courts must "view all facts and inferences drawn therefrom in the light most favorable to" the party opposing arbitration. *Boykin*, 3 F.4th at 839.

Here, the defendant met its burden to show that the parties made an arbitration agreement and the plaintiff failed to show that a genuine issue of material fact exists with respect to whether the parties made an arbitration agreement.

A.  **The Defendant's Burden**

The parties agree that Michigan law supplies the elements of the defendant's *prima facie* case. (*See* ECF No. 7, PageID.54; ECF No. 10, PageID.19). In Michigan, "[a] valid contract requires five elements: (1) parties competent to contract, (2) proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Ford v. Midland Funding, LLC*, 264 F. Supp. 3d 843, (E.D. Mich. 2017) (quoting *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 830 (Mich. 2016)). And "proponents of a contract must prove its existence by a preponderance of the evidence" under Michigan law. *Id.* The plaintiff argues

6

that the defendant has failed to carry its burden with respect to the fourth element, mutuality of agreement, but the Court disagrees.[2]

"Mutuality of agreement requires a valid offer and acceptance." *McMillon v. City of Kalamazoo*, 983 N.W.2d 79, 81 (Mich. 2023) (mem.). An individual to whom an offer was extended accepts it when he or she "manifests an intent to be bound by [it], and all legal consequences flowing from [it], through voluntarily undertaking some unequivocal act sufficient for the purpose." *Krause v. Gerrish Township*, 517 N.W.2d 756, 765 (Mich. Ct. App. 1994), *aff'd in part, rev'd in part on other grounds*, *Kraus v. Dep't of Com.*, 547 N.W.2d 870 (Mich. 1996).

The defendant argues that the plaintiff manifested an intent to be bound by the arbitration agreement when he signed the employment agreement. As evidence that the plaintiff signed the agreement, the defendant points to a section of the Agreement that contains the words "Employee Signature" beside a box with a checkmark on it, text containing the plaintiff's name and "7/26/2019 7:06 PM" below the box, and the words "Checking the checkbox above is equivalent to a handwritten signature" underneath the plaintiff's name. (*See* ECF No. 7-1, PageID.80). And the defendant's employee declares that the plaintiff signed the agreement electronically using the defendant's iCIMS system, which requires prospective employees to create a unique online profile secured by a password.

In response, the plaintiff discusses evidence that the defendant did *not* present concerning mutuality of acceptance, such as "the manner or circumstance surrounding the presentation of this document to Plaintiff" and proof "that Plaintiff had adequate time to review the alleged

---

2. Because mutuality of agreement is the only element in dispute here, the Court does not address the other elements of a Michigan contract.

agreement, that anyone explained it to him, or that it recommended that he find an attorney to review and explain the contract to him." (ECF No. 10, PageID.120). But the plaintiff points to no authority that this evidence was necessary for the defendant to carry its burden with respect to mutuality of agreement, and the Court declines to impute any.

The defendant met its *prima facie* burden with respect to mutuality of agreement, and therefore met its burden to show that the parties made an arbitration agreement.

### B. The Plaintiff's Burden

Defendant seeks to place the parties' arbitration agreement in issue in two ways. First, he challenges whether the parties ever concluded an arbitration agreement. Second, he argues that the agreement was not procedurally fair under Michigan law and is therefore invalid. Both of these claims fail.

#### i. Existence of Arbitration Agreement

The plaintiff argues that a genuine issue of material fact exists with respect to mutuality of agreement, and thus whether an arbitration agreement between the parties exists. As evidence for this claim, the plaintiff points to his declaration, where he states that he "do[es] not recall signing an arbitration agreement and . . . had no idea what it meant or its significance," "was never told what he was signing nor did [he] understand the document or its implications," "[a]ny document sent to [him] were emailed and [he] was told to return them as soon as possible in order to get orientation started," and he "would not have signed an arbitration agreement without further explanation of what arbitration is, how it works, and how it applies to the employment agreement for representation." (ECF No. 10-1, PageID.129). However, the plaintiff does not unequivocally deny that he signed the Employment Agreement. *See Boykin*, 3 F.4th at 840 ("[A]n 'unequivocal denial' that takes the form of admissible 'evidence' can create a genuine

8

dispute of fact." (quoting *Interbras Cayman Co. v. Orient Victory Shipping Co.*, 663 F.2d 4, 7 (2d Cir. 1981))).

The defendant cites *Brown v. Heartland Employment Services, LLC*, No. 19-11603, 2020 WL 2542009 (E.D. Mich. May 19, 2020), in response. In *Heartland*, this Court analyzed whether the defendant-employer, Heartland, was entitled an order compelling the plaintiff-employee, Mary Brown, to arbitrate claims she had raised against it. *See id.* at *3. After determining that Heartland had met its *prima facie* burden, this Court further determined that Brown's declarations "that she knows she did not see the MAA; that she does not remember seeing the slideshow or clicking 'Acknowledge;' and that if she clicked 'Acknowledge,' she did not intend to be bound to arbitration" were insufficient to demonstrate a genuine dispute of material fact with respect to whether Brown had electronically signed the parties' disputed arbitration agreement. *Id.* at *4.

The plaintiff's statements here, which are nearly identical to Brown's statements in *Heartland*, are likewise insufficient to create a genuine dispute of material fact with respect to mutuality of agreement. *See also Boykin*, 3 F.4th at 840 ("A party thus cannot expect to obtain a trial under § 4 simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration."). The plaintiff has failed to carry its burden to show that no arbitration agreement between the parties exists.

    ii.  **Validity of Arbitration Agreement**

The plaintiff argues that his state-law claims are outside the scope of the parties' arbitration agreement as a matter of law because the parties' arbitration agreement was procedurally unfair under Michigan law. Although the plaintiff frames this argument as a

9

challenge to whether his state-law claims are embraced by the parties' arbitration agreement, the Court construes it as also challenging the validity of the parties' arbitration agreement.

The plaintiff cites *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208 (Mich. Ct. App. 1999), as support for his argument that the parties' arbitration argument is invalid. In *Rembert*, the Michigan Court of Appeals discussed agreements to arbitrate statutory employment discrimination claims:

> [P]redispute agreements to arbitrate statutory employment discrimination claims are valid if: (1) the parties have agreed to arbitrate the claims (there must be a valid, binding, contract covering the civil rights claims), (2) the statute itself does not prohibit such agreements, and (3) the arbitration agreement does not waive the substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.

*Id.* at 226.

In determining the validity of an arbitration agreement, "'state law may be applied *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally,' although the FAA preempts 'state laws applicable only to arbitration provisions.'" *Great Earth*, 288 F.3d at 889 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996)). Consequently, the plaintiff's reliance on *Rembert* is misguided because *Rembert* clearly announced a rule that applies solely to arbitration agreements, which is preempted by the FAA.

Because the defendant met its initial burden and the plaintiff has failed to rebut it, the parties' arbitration agreement is not in issue under § 4, and the defendant is entitled to an order compelling the plaintiff to arbitrate the claims that are within the scope of the parties' arbitration agreement.

**III.    Scope of the Arbitration Agreement**

To determine the scope of an arbitration agreement, this Court "begins with 'the plain language of the arbitration clause.'" *Hess v. Positive Energy Fleet, LLC*, 571 F. Supp. 3d 844,

10

849 (E.D. Mich. 2021) (quoting *Altobelli v. Hartmann*, 884 N.W.2d 537, 543 (Mich. 2016)). This Court "then considers 'whether a plaintiff's particular action falls within that scope.'" *Id.* (quoting *Altobelli*, 884 N.W.2d at 543). The party opposing arbitration has the burden of proving that a particular claim is outside the scope an arbitration agreement where, as here, the agreement is governed by Michigan law. *See id.*

On its face, the parties' arbitration agreement embraces "any discrimination or other statutory claims." (ECF No. 7-1, PageID.77). Because all of the claims that the plaintiff raised in his complaint are statutory, all of those claims are presumptively embraced by the parties' arbitration agreement. The plaintiff does not dispute this conclusion with respect to his federal statutory claims.

However, as discussed above, the plaintiff argues that his state-law claims are outside the scope of the parties' arbitration agreement because the agreement was procedurally unfair under *Rembert*. But *Rembert* announced a rule concerned the validity, and not the construction, of arbitration agreements. *Rembert* is thus irrelevant to whether the plaintiff's state-law claims are embraced by the parties' valid arbitration agreement.

The plaintiff has failed to show that any of his claims are excluded by the parties' arbitration agreement, and therefore all of the plaintiff's state-law claims are arbitrable. The plaintiff's federal statutory claims are also arbitrable unless Congress has shown a contrary intent.

IV. **Arbitrability of the Plaintiff's Claims**

The plaintiff argues that Congress did not intend that his federal statutory claims should be arbitrable. This claim lacks merit.

11

The plaintiff discusses a number of cases where the Sixth Circuit reiterated that federal courts may not compel parties to arbitrate without their consent. Because the Court has already found that the making of the parties' arbitration agreement is not in issue under § 4, this argument fails.

The plaintiff also argues that Congress's recent enactment of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFASA") shows that Congress intended that "disputes related to sexual assault or harassment" should not be arbitrable. (ECF No. 10, PageID.124). Assuming *arguendo* that the plaintiff raises claims that are embraced by the EFASA, this argument also fails.

The EFASA invalidated "predispute arbitration agreement[s]" that relate to "[a] sexual assault dispute or [a] sexual harassment dispute." 9 U.S.C. § 402. However, Congress provided that the EFASA "shall only apply with respect to any dispute or claim that arises or accrues *on or after the date of enactment of this Act*," and the Act was enacted on March 3, 2022. *Id.* § 401 note (emphasis added). Because the subject-matter of the plaintiff's complaint occurred while he was still employed by the defendant, the EFASA does not show that Congress intended that any of his claims should not be arbitrable.

The plaintiff's federal statutory claims are arbitrable.

**V.      Dismissal of the Plaintiff's Complaint**

The defendant argues that if it is entitled to an arbitration order, then the Court should dismiss the plaintiff's complaint. The Court declines to dismiss the plaintiff's complaint and will administratively stay this case pending the outcome of the arbitration proceedings between the parties.

**CONCLUSION & ORDER**

The defendant is entitled to an order compelling the plaintiff to arbitrate if the parties' arbitration agreement is not in issue. Because the defendant carried its initial burden to show that the parties made an arbitration agreement and the plaintiff has failed to show that a genuine dispute of material fact exists with respect to the existence or validity of the agreement, the defendant is entitled to an arbitration order.

The defendant is entitled to an order compelling the plaintiff to arbitrate his claims that are embraced by the parties' arbitration agreement and that Congress did not intend to be non-arbitrable. Because all the plaintiff's claims are embraced by the parties' arbitration agreement and Congress did not intend that any of those claims should be non-arbitrable, the defendant is entitled to an order compelling the plaintiff to arbitrate all of the claims that he raised in this action.

Accordingly, IT IS ORDERED that the defendant's Motion to Compel Arbitration is GRANTED to the extent that the Court COMPELS the plaintiff to arbitrate the claims asserted in this case. It is denied in all other respects.

IT IS FURTHER ORDERED that this action is STAYED until the conclusion of the arbitration proceedings and this action is CLOSED on the Court's docket for statistical purposes.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, for the purposes of confirming, vacating, or correcting any arbitration award. Any party may move to do so at the conclusion of the arbitration proceedings.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  December 18, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 18, 2023, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager
